# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| DAVID C. COLLINS, | : | Bankruptcy No. 06-12517DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

In this case, the Court must apply the provisions of the Bankruptcy Code that govern a debtor's exemptions to the unique form of property ownership of husband and wife recognized by Pennsylvania common law, i.e., tenants by the entirety.  Debtor has filed a motion (the "Motion") to avoid the fixing of a judgment lien held by Imondi Eggs, Inc. ("Imondi" and the "Imondi Lien") against Debtor's interest in real property that he owns with his non-debtor wife as tenants by the entirety.  The Motion asserts that the Imondi Lien impairs the exemption in the property allowed to him under the Bankruptcy Code.  For the reasons that follow, I agree and hold that Debtor may avoid the fixing of the Imondi Lien as  it impairs his exemption.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

There are no disputed facts. On or about April 21, 2006, a judgment in the amount of $74,642.91 was entered in favor of Imondi and against the Debtor, David C. Collins, ("Debtor"). It was indexed in the Office of the Prothonotary of Bucks County, Pennsylvania, under docket number 2006-02117-29-1. Debtor commenced this case shortly thereafter, on June 19, 2006.

Debtor and his wife own residential real property at 3018 Bedminster Road, Bedminster, Bucks County, Pennsylvania (the "Residence") as tenants by the entirety. The Residence, which is valued at $900,000, is encumbered by two mortgages totaling $502,088.11, leaving equity in the Residence of $397,911.89. On Schedule C to his Petition, Debtor claimed an exemption for the entire amount of the equity pursuant to 11 U.S.C. § 522(b)(2)(B). He thereafter filed the Motion. Imondi filed a response, and after a hearing on the Motion, I gave the parties opportunity to brief the issue. The Motion is now ripe for adjudication.

---

[1] The facts are either stated by Debtor in the Motion and admitted by Imondi in its response thereto, or appear in public filings of this Court and the Pennsylvania Court of Common Pleas. I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). See also Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000) (Judicial notice of public filings is appropriate under Federal Rule of Evidence 201(b)(2)). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

**DISCUSSION**

I.

It will be helpful to first review the relevant principles of Pennsylvania law with regard to tenancy by the entirety. This unique form of property ownership is based upon the legal fiction that husband and wife are a single entity under the law. As has been oft quoted, its "essential characteristic is that 'each spouse is seised *per tout et non per my*, i.e., of the whole or the entirety and not of a share, moiety or divisible part.'" E.g., In re Brannon, 476 F.3d 170, 173 (3d Cir. 2007) (*quoting* In re Gallagher's Estate, 352 Pa. 476, 43 A.2d 132, 133 (1945)).[2] Thus, upon the death of one spouse, the survivor does not take any additional interest in the property, for the survivor already has an interest in the whole property. Rather, "[i]t is a mere change in the properties of the legal person holding, and not an alteration in the estate holden." Beihl v. Martin, 236 Pa. 519, 523 84 A. 953, 954 (1912).

It is this unique characteristic, the owning of the entire estate by the fictional husband-wife entity, that protects the entireties estate from the creditors of the individual

---

[2] Quoting a well respected treatise, the Court noted:

> "[H]usband and wife are looked upon, together, as a single entity, like a corporation. The single entity is the owner of the whole estate. When the husband or wife dies, the entity continues, although it is now composed of only one natural person rather than two."
>
> Ladner on Conveyancing in Pennsylvania, § 1.08 at 16 (John Makdisi, ed., rev. 4th ed. 1979). Further, "neither tenant by the entirety owns any undivided share at all; both together, as a single entity, own the whole, or entire, estate." Id.

476 F.3d at 173.

spouse. The enforcement of process against the husband's interest in the estate must, as a matter of law, infringe upon the wife's interest. As such, entireties property cannot be accessed by creditors of only one spouse. Brannon, 476 F.3d at 173; In re O'Lexa, 476 F.3d 177, 179 (3d Cir. 2007).

However, the inability to access entireties property does not preclude a judgment creditor from obtaining a lien against one spouse's interest, albeit an unenforceable or inchoate lien. The seminal case on this issue is Beihl v. Martin, 236 Pa. 519, 84 A. 953 (1912). In that case, the Pennsylvania Supreme Court acknowledged that a judgment against the husband gave rise to a lien and explained the nature of that lien:

> . . . the judgments here obtained against the husband were liens. But upon what? Certainly not upon the entirety that was in the husband, for the entirety of the estate was in the wife equally . . .
> . . .
>
> There remains to the husband a right of survivorship, by virtue of which, in case he survive the wife, while taking no estate, yet because the entirety in the wife is by her death extinguished, his entirety embraces every interest in the estate. Contingent though this ultimate divestitute [*sic*] be, the expectancy is nevertheless a vested interest, and as such may be the subject of lien.

Id., 236 Pa. at 526-27. Having found that the lien attaches upon the expectancy interest of the adjudged spouse, the Biehl Court next addressed when such a lien would be enforceable. Noting that a spouse's expectancy, like his or her other interest in the entireties estate, cannot be unilaterally sold or assigned, "we reach the conclusion that the lien on the expectant interest of the husband becomes enforceable only when the expectancy ripens into a realized fact; then execution is not upon an expectancy, but upon an actual existing estate."

Id. at 528. Thus, the judgment lien is held by the creditor "subject to its possible extinction in either of two events, the predecease of the husband, or the alienation of the estate by the joint act of the parties. The efficiency of the lien depends upon the nonhappening of either." Id. at 528-29. See also Napotnik v. Equibank & Parkvale Savings Ass'n, 679 F.2d 316, 319 (3d Cir.1982) ("At most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship - a lien that becomes enforceable only when the other spouse dies" (*citing* Beihl)).

In this case, however, the Debtor is not content to rely on an event outside his control that would expose the equity in the Residence to his creditor but rather seeks to avoid the presently unenforceable but inchoate judicial lien under provisions of the Bankruptcy Code that permit such relief. I turn now to those provisions.

## II.

### A. Debtor's Exemption

Upon his filing of the petition in bankruptcy, Debtor's interest in the Residence constituted property of the bankruptcy estate. Napotnik, 679 at 318 (3d Cir.1982) (noting that 11 U.S.C. § 541(a) is "certainly broad enough to include an individual debtor's interest in property held as a tenant by the entirety"). Though such interest is brought into the bankruptcy estate by § 541, Code § 522 allows debtors to exempt certain property from the estate. Debtor may choose either the specific federal exemptions listed in § 522(d) ("federal exemptions") pursuant to § 522(b)(2), or he may choose the exemptions permitted under state law and general (nonbankruptcy) federal law ("general exemptions") pursuant

to § 522(b)(3).³ Here Debtor has chosen the general exemptions to exempt his interest in the Residence under § 522(b)(3)(B).

Section 522(b)(3)(B) allows a debtor to claim "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest ... is exempt from process under applicable nonbankruptcy law." As the language of the statue makes clear, the exemption is available to the extent that Debtor's interest in the Residence is exempt from process. With respect to creditors of <u>both</u> husband and wife, such as the mortgage debt on the property, entirety property may be reached by creditors to satisfy the joint debts of husband and wife. "In this respect at least, such property is not exempt from process in Pennsylvania." <u>Napotnik</u>, 679 F.2d at 320. On the other hand, "a creditor of either spouse cannot acquire by judgment an enforceable lien in entirety property." <u>Id.</u> (*citing* <u>Amadon v. Amadon</u>, 359 Pa. 434. 59 A.2d 135 (1948)). As Imondi is a creditor solely of the Debtor, it may not reach the entirety property. At most it has a presently unenforceable lien upon Debtor's wife's expectancy of survival. <u>Id.</u>

Third Circuit jurisprudence therefore makes clear that Debtor may exempt the <u>whole</u> of the entireties property that qualifies under § 523(b)(3)(B), <u>i.e.</u>, that is exempt from process, <u>Brannon.</u> 476 F.3d at 175; <u>O'Lexa</u>, 476 F.3d at 179. This includes not only the

---

³ Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109-8; 119 Stat 23 ("BAPCPA"), § 522(b)(1) was renumbered § 522(b)(2) and § 522(b)(2)(B) was renumbered § 522(b)(3)(B), but otherwise remained unchanged. All references are to the amended statute.

equity but Debtor's survival expectancy interest which, like the rest of his entireties interest, cannot be sold, assigned, or executed on by creditors. Biehl, 236 Pa. at 528-29, 84 A. 953. It therefore is exempt from process and is part and parcel of his exemption. Napotnik, 679 F.2d at 319 (holding that "exempt from process" in this provision is understood to mean immune from process or that which creditors cannot reach).

Debtor has valued his exemption at $397,911.89. Imondi has never filed an objection to Debtor's claimed exemption, but for the first time in its supplemental reply to Debtor's memorandum of law, Imondi asserts "The Time For Challenging The Exemption Should Not Be Barred." Reply Memorandum of Imondi ("Imondi Reply Mem.") at 2. Section 522(l) states that, unless a party in interest objects, "property claimed as exempt ... is exempt." Bankruptcy Rule 4003(b) specifically sets a time limit for filing objections to the Debtor's claimed exemptions:

> . . . a party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

Fed. R. Bankr. P. 4003(b)(1). The meeting of creditors was concluded on November 16, 2006 and Debtor subsequently filed an amended Schedule F on November 27, 2007. Thus, Imondi had until December 27, 2006 to file an objection to Debtor's claimed exemption or to request an extension of time to do so. It did neither, notwithstanding that Debtor had filed this Motion on October 19.

Imondi acknowledges binding Supreme Court authority on this issue. In <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, 112 S.Ct. 1644 (1992), the Court held that the failure to object to a claimed exemption is fatal, even where the debtor had no colorable basis to make a claim for the exemption. In that case, the Chapter 7 trustee viewed the debtor's lawsuit as having no value and therefore did not bother to object to her claimed exemption of the full amount of that lawsuit, notwithstanding the uncontested fact that she was not entitled to that amount under the Bankruptcy Code. As the Court noted:

> Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption. If Taylor did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, <u>see</u> Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, see Rule 4003(b). Having done neither, Taylor cannot now seek to deprive Davis and respondents of the exemption.

503 U.S. at 644, 112 S.Ct. at 1648.

Imondi argues that <u>Taylor</u> is distinguishable if I consider its Answer to the Motion, which was filed October 23, 2006, to be a challenge to the claimed exemption. Imondi does not, however, explain how I could possibly so interpret its Answer, given that its Answer expressly admits that Debtor is entitled to an exemption "in his entireties interest in his residence representing any and all the equity in the property over the two mortgages." Motion and Answer thereto, ¶ 3. Imondi chose to concede the propriety of Debtor's exemption and limit its challenge to Debtor's assertion that the Imondi Lien impairs the exemption. Having made this strategic choice, Imondi is bound to its consequence.

Moreover, the only argument that Imondi proffers against Debtor's exemption appears to be an equitable one, with no cited authority:

> . . . it is illogical for the Debtor to receive the benefit of the exemption and avoid the "lien", when, if his spouse were also judgment debtor, the lien of Imondi would clearly survive.  If Debtor is entitled to exempt real estate owned by the entireties, the exemption should be for the equity in excess of all liens on the real property, including those judgments against the debtor only.

Imondi Reply Mem at 2.  However, that is an argument that is best addressed to the Pennsylvania legislature.  As noted by the recent Third Circuit pronouncement on this issue, that is precisely the intent of a tenancy by the entirety:

> A tenancy by the entireties has a number of unique features designed to protect the property of husband and wife.  The ability of the husband and wife to shield property through this form of ownership is to some extent in friction with the bankruptcy process of making a debtor's assets available to creditors.  Nonetheless, the attributes of entireties ownership remain intact while the trustee holds the property following the filing of a bankruptcy petition unless, or until, spouses fail to seek exemptions for the entireties assets.

Brannon, 476 F.3d at 176.  Debtor has claimed, without challenge, his exemption for the equity in the entireties asset.  I am therefore bound by the Code to accept that exemption. 11 U.S.C. 522(l).

### B. Avoiding the Fixing of the Imondi Lien

Debtor seeks to avoid the Imondi Lien pursuant to § 522(f)(1)(A), which provides that a debtor may "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is-(A) a judicial lien...." 11 U.S.C. § 522(f)(1)(A). The plain language thus indicates four requirements that must be met:  (1) the lien must be

a judicial lien; (2) the lien must have fixed on an interest of the debtor in property; (3) the debtor must claim and be entitled to exempt that property interest under § 522(b); and (4) the lien must impair the exemption. In re Wansor, 346 B.R. 147, 148 (Bankr. W.D. Pa. 2006).

The first requirement would not appear to be at issue, as Imondi admitted that the entry of the judgment created an inchoate judicial lien against the Residence. Motion and Answer ¶ 2. However, in its memorandum Imondi backs away from its prior admission, arguing that the Debtor is seeking to avoid a non-existent lien interest. It cites to In re Williamson, 11 B.R. 791 (Bankr. W.D. 1981), where the court held that upon electing the state exemptions, entireties property became immune from process and such immunity did not create an in rem exemption that could be impaired. In so contending, Imondi nonetheless recognizes that a more recent case of this Court has considered and refused to accept that view. In In re Hope, 77 B.R. 470, 474-75 (Bankr. E.D. Pa. 1987), the court acknowledged the possibility that if there is nothing to seize or sell upon execution of the judgment, there cannot be a lien. If so, Beihl's holding that a judgment against a single spouse results in a present but unenforceable lien may have lost its vitality. However, absent further guidance from the state appellate courts, the Hope court concluded that Beihl is still controlling law. Id. at 475. Accord In re Wansor, 346 B.R. 147 (Bankr. W.D. Pa. 2006). I find nothing in Pennsylvania appellate jurisprudence to dictate otherwise. Because it is well established that inchoate liens are clearly included within the Code's definition of lien, the first requirement is met. E.g. Wansor, 346 B.R. at 151 (*quoting* from the legislative history of § 101(37)).

As to the second requirement, Beihl makes clear that the Imondi Lien has fixed upon Debtor's expectancy interest in the Residence, Beihl, supra § I. As to the third requirement, I have already determined that Debtor is entitled to his claimed exemption, which includes his expectancy interest. Supra § II.A. Thus, the only remaining requirement is whether the Imondi Lien impairs Debtor's exemption.

Imondi contends that the Imondi Lien does not impair the Debtor's exemptions because he and his wife can dispose of the Residence and recognize their equity at any time, and until the tenancy is destroyed, Imondi cannot exercise any of its rights against the residence. This argument has been foreclosed by the 1994 amendments to the Bankruptcy Code that added § 522(f)(2)(A). This provision defines when a lien impairs an exemption:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of-
>
> (i)   the lien;
> (ii)  all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Id. The legislative history makes abundantly clear that Congress has chosen this formulaic approach to govern impairment under the facts before me:

> Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption . . .

H.R. Rep. No. 103-835 at 52-53 (1994), *as reprinted in* 1994 U.S.C.C.A.N 3340, 3361-63. One of the scenarios that the amendment sought to address was judgment liens on homestead exemptions that could not be enforced.

> By defining "impairment," the amendment also clarifies that a judicial lien on a property can impair an exemption <u>even if the lien cannot be enforced through an execution sale</u>, . . .

Id. (emphasis added).[4]  Thus, Imondi's argument and the pre-1994 case law it relies upon are not persuasive.

Applying the statutory formula in this case evidences the impairment of Debtor's exemption of his interest in the Residence.[5]  Indeed as Debtor's interest in the Residence is

---

[4] The amendment is intended to support the result in In re Henderson, 18 F.3d 1305 (5th Cir. 1994) which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale. Id. While Pennsylvania law affords the Debtor here more freedom with respect to the Residence encumbered by the inchoate lien (e.g., it can be sold by both spouses free of the lien), the Henderson court reasoning is equally applicable.

> It is clear to us that because the lien is unenforceable the Hendersons' homestead exemption is not "legally impaired." However, the term "impair" encompasses more than the idea of "legal" impairment. The term impair means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." Black's Law Dictionary 752 (6th ed. 1990).

Id. at 1310. To the extent an unenforceable lien could cast a cloud on title, lead to future litigation, prevent a closing, preclude title insurance, require posting of a bond, or otherwise impede a debtor's right to freely deal with his property, it impairs. Id. (*citing* Packer v. General Motors Acceptance Corp. (In re Packer), 101 B.R. 651, 653 (Bankr. D. Colo. 1989)).

[5] This is apparent by applying § 522(f)(2)(A):

| | |
|---|---|
| Imondi Lien: | $ 74,642.91 |
| All other liens: | $502,088.11 |
| Debtor's exemption with no liens: | $397,911.89 |
| Total | $974,642.91 |

The sum of subsections (i)-(iii) thus exceeds the value of Debtor's unencumbered entireties interest
(continued...)

the whole interest in the property, its value will always be equal to the amount of the exemption that the Debtor could claim if there were no liens on the property.  As noted by one court:

> Consequently, it is not necessary to determine the value of the real property when only one spouse is a debtor, because the sum of liens and exemption amount referred to in Section 522(f)(2)(A) will always be greater than the value of the Debtor's interest in the property by at least the amount of the judgment lien.

Lashley v. Fuhrer (In re Lashley), 206 B.R. 950, 954 (Bankr. E.D. Mo. 1997).  As the entire Imondi Lien impairs Debtor's exemption, it will be avoided.

## CONCLUSION

For the foregoing reasons, the Motion shall be granted.  An Order consistent with this Memorandum Opinion will issue.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:  April 5, 2007

---

(...continued)
in the Residence ($900,000) by $74,642.91, the exact amount of the Imondi Lien.

Putting numbers to its argument in recognition of the existence of § 522(f)(2)(A), Imondi calculates the impairment (or lack thereof) as follows:  the Residence value ($900,000) minus the total value of all liens, including the Imondi Lien ($576,731.02), leaves "unimpaired equity of $323,268.90." Imondi Mem. at 7.  While this is a correct mathematical exercise, it does not give effect to Debtor's exemption of the full value of the equity as required by the statute.

-13-

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| DAVID C. COLLINS, | : | Bankruptcy No. 06-12517DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 5th day of April, 2007, upon consideration of the Motion of Debtor to Avoid Inchoate Judicial Lien of Imondi Eggs, Inc. Pursuant to 11 U.S.C. § 522(f)(1)(A) (the "Motion"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED**. The judicial lien created by the judgment indexed in the Office of the Prothonotary of Bucks County, Pennsylvania, under docket number 2006-02117-29-1 in the amount of $74,642.91 is avoided.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge